per curiam:
El 31 de julio de 2007 la Directora de la Oficina de Inspección de Notarías (ODIN) sometió un in-forme sobre el estado de la notaría del Ledo. Edgardo Me-sonero Hernández. De éste surge que los Protocolos del notario correspondientes a los años 1994,1995,1997,1998, 2000, 2001 y 2002 fueron aprobados con deficiencias.
La Directora de ODIN trajo a nuestra atención ciertas deficiencias en los Protocolos correspondientes a los años 2000 y 2001 que, a su entender, indicaban que el notario Mesonero Hernández no observó la diligencia requerida en su desempeño notarial.
Las deficiencias con las que fue aprobado el Protocolo del 2000 son las siguientes:(1)
Escritura número 54 sobre Donación — comparece como tes-tigo instrumental un pariente de uno de los otorgantes; faltó expresión de las dos lecturas en alta voz y de la unidad de acto debido a que la donante no sabía leer. A pesar de que el notario reconoce que existe un vínculo filial entre la otorgante do-nante y el testigo, se .ha visto impedido de subsanar el instru-mento debido a que según éste la otorgante ha perdido sus facultades mentales.
Escritura número 92 sobre Testamento — faltó la expresión sobre el conocimiento entre testigos y testador a tenor con los *634 Arts. 630 y 631 del Código Civil de Puerto Rico y el caso de In re Barney López, 146 DPR 756 (1998). El notario evidenció a la Inspectora el fallecimiento de la testadora y la autorización de una escritura sobre división de herencia autorizada ante él mismo lo que demuestra que la deficiencia no ocasionó perjui-cios a terceros. (Escolio omitido y énfasis en el original.) Es-tado de la Notaría del Ledo. Edgardo Mesonero Hernández, pág. 2.
Las deficiencias con las que fue aprobado el Protocolo del 2001 son las siguientes:
Escrituras número 40 y 88 sobre Testamento Abierto — faltó la expresión sobre conocimiento entre testigos y testador. El no-tario informó el fallecimiento de la testadora de la escritura número 40, pero no brindó información sobre la escritura nú-mero 88.
Escrituras número 77 sobre Donación y número 90 sobre Compraventa — faltó la firma del notario. Artículos 13, 28 y 34 de la Ley Notarial. El notario informó que la donante de la escritura número 77 falleció. No brindó información sobre la escritura número 90. (Escolio omitido y énfasis en el original.) Estado de la Notaría, ante.
Examinado el informe de la Oficina de Inspección de Notarías, en una resolución de 16 de noviembre de 2007 y notificada el 26 de ese mes, ordenamos al Ledo. Edgardo Mesonero Hernández mostrar causa por la cual no debía-mos ordenar su suspensión del ejercicio de la abogacía.
II
El Artículo 22 de la Ley Notarial de Puerto Rico, dispone, en lo pertinente, que “[n]o podrán ser testigos instrumentales los empleados del notario autorizante, ni los parientes [de éste] o de las partes interesadas, dentro del cuarto grado de consanguinidad o segundo de afinidad”. 4 L.P.R.A. see. 2040. La naturaleza de esta falta anula dicho instrumento de acuerdo con lo dispuesto en el Artículo 34 de la Ley Notarial de Puerto Rico, 4 L.P.R.A. see. 2052, y la Regla 33 del Reglamento Notarial, 4 L.P.R.A. Ap. XXIV. *635 Véanse: Sucn. Santos v. Registrador, 108 D.P.R. 831 (1979); Viqueira v. Registrador, 43 D.P.R. 34 (1932).
Por otra parte, cuando el otorgante no sabe o no puede firmar, el Artículo 20 de la Ley Notarial de Puerto Rico exige la comparecencia de un testigo instrumental. 4 L.P.R.A. see. 2038. En tales circunstancias, se requiere que haya unidad de acto, lo cual el notario hará constar bajo su fe en la escritura, conforme a lo dispuesto en el Artículo 24 de la Ley Notarial, 4 L.P.R.A. sec. 2042, en la Regla 35 del Reglamento Notarial, 4 L.P.R.A. Ap. XXIV, y a lo expuesto en In re López Toro, 146 D.P.R. 756 (1998). Es éste un deber de estricto cumplimiento cuya omisión, si bien no acarrea la nulidad del testamento, atenta contra la fe pública depositada en él.
En cuanto a la omisión del notario de consignar el conocimiento entre los testigos y el testador, hemos resuelto que tampoco invalidará automáticamente el testamento, aunque pudiera acarrear sanciones disciplinarias. In re López Toro, ante, citando a Bardeguez v. Registrador, 27 D.P.R. 214 (1919); In re Méndez Rivera, 141 D.P.R. 753 (1996).
La omisión de la firma del notario, al igual que la ausencia de las firmas de las partes o testigos, es causa de nulidad del instrumento, según lo establece claramente el Artículo 34 de la Ley Notarial, ante. Según expresamos en In re González Maldonado, 152 D.P.R. 871 (2000), el único remedio que tiene el notario a su disposición para corregir tal deficiencia es el otorgamiento de una nueva escritura. Véanse, además: In re Salas Arana, 170 D.P.R. 202 (2007); In re Amundaray Rivera, 163 D.P.R. 251 (2004); In re Sánchez Quijano, 148 D.P.R. 509 (1999); In re Moreira Avillán, 147 D.P.R. 78, 86-87 (1998); In re Platón, 113 D.P.R. 273, 274 (1982).
Hemos establecido que el ejercicio de nuestra facultad disciplinaria conlleva examinar múltiples factores. *636 En particular, en los procesos disciplinarios contra los le-trados se deben examinar las circunstancias objetivas con-currentes con la comisión de las faltas éticas alegadas, la conducta del letrado luego de ocurrida la falta y el grado de arrepentimiento, si alguno, qué éste muestre antes de im-ponerle urna sanción disciplinaria. In re Padilla Santiago, 158 D.P.R. 787 (2003); In re Verdejo Roque, 153 D.P.R. 464 (2001); In re Ardín, 75 D.P.R. 496, 501 (1953).
Asimismo hemos resuelto que
[a]l determinar la sanción disciplinaria que ha de imponerse a un abogado que ha incurrido en conducta impropia, acostumbramos considerar, entre otras cosas, el previo historial del abogado, si se trata de una primera falta o de una conducta aislada y si el abogado goza de buena reputación en la comunidad. (Enfasis nuestro.) In re Rivera Arvelo, 132 D.P.R. 840, 865 (1993).
III
En la Escritura Núm. 54 del 2000, sobre donación otor-gada ante el licenciado Mesonero Hernández, figuró como testigo instrumental un pariente de la donante, según ad-mitido por el propio notario. Sin embargo, la enfermedad de la donante imposibilitó que se otorgara una nueva es-critura y se subsanara la deficiencia. El fallecimiento de la testadora en la Escritura Núm. 92 del mismo año imposi-bilitó igualmente la subsanación de la falta de expresión sobre el conocimiento en los testigos y la testadora. El fa-llecimiento de la testadora impidió también que se subsa-nara la misma deficiencia en la Escritura Núm. 40 de 2001. Igualmente, no se logró subsanar la deficiencia de la que adolece la Escritura Núm. 77 de 2001 debido al falle-cimiento de la donante. Según indicó la Oficina de Inspec-ción de Notarías, el notario no ofreció detalles sobre la Es-critura Núm. 80 y la Núm. 90 del mismo año.
En su moción en cumplimiento de orden para mostrar causa, el licenciado Mesonero Hernández recalca que *637 desde que surgió la controversia en el caso de marras ha demostrado su interés en aclarar la situación de su Proto-colo de instrumentos públicos para los años 2000 y 2001 y su “intención inequívoca” de atender con diligencia y serie-dad los señalamientos de la Oficina de Inspección de Notarías. Reconoce, además, sus faltas y omisiones en el descargo de su función notarial, pero aduce qüe ninguna de las faltas respondió a alguna motivación indebida o frau-dulenta de su parte.
El licenciado Mesonero Hernández hace hincapié en que a pesar de dichas faltas, los negocios jurídicos contenidos en los instrumentos públicos a que se refiere el informe tuvieron plena eficacia entre las partes contratantes o en-tre los herederos de los otorgantes. De esa forma, las par-tes realmente interesadas no han sufrido lesión o perjuicio alguno.por las omisiones involuntarias del notario.
Asimismo nos ruega que consideremos circunstancias atenuantes que a su entender obran en este caso, en particular que a través de su larga carrerá profesional, desde que fue admitido en 1979, no ha sido objeto de señala-miento ético alguno. Sometió, además; testimonios de su dedicación a la representación de personas indigentes en la región judicial de Aguadilla, lo cual indudablemente amerita nuestra consideración. In re Cardona Álvarez, 116 D.P.R. 895 (1986).
Considerado lo anterior y la jurisprudencia aplicable, limitamos la sanción disciplinaria en este caso a la suspen-sión del licenciado Mesonero Hernández de la práctica notarial por el término de tres meses, contados a partir de la notificación de este dictamen.

Se dictará sentencia de conformidad..

 Las deficiencias con las que se aprobaron los Protocolos de 1994, 1995, 1997, 1998 y 2002, fueron atendidas mediante resoluciones administrativas de la Oficina de Inspección de Notarías.